IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FENYANG AJAMU STEWART,             )
                                         )
        Plaintiff                     )
                                         )
        v.                           )    1:16-CV-213 (LMB/JFA)
                                         )
MICHELLE K. LEE, Director,           )
United States Patent and Trademark Office    )
                                         )
        Defendant.

MEMORANDUM OPINION

Before the Court is defendant Michelle K. Lee's Motion to Dismiss [Dkt. No. 30].

Plaintiff Fenyang Ajamu Stewart ("plaintiff" or "Stewart") has filed an opposition, [Dkt. No. 36]

("Pl. Opp."), to which defendant has responded, [Dkt. No. 39] ("Reply"). Although plaintiff has

also improperly filed a surreply without first seeking leave of court, [Dkt. No. 40] ("Surreply"),

the Court has considered it out of deference to plaintiff's pro se status. For the reasons that

follow, defendant's Motion to Dismiss will be granted.

## I.    BACKGROUND

On February 29, 2016, plaintiff, a patent examiner, filed his initial complaint, raising

seven counts primarily under the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., against

Michelle K. Lee ("defendant") in her official capacity as Director of the United States Patent and

Trademark Office ("USPTO"). Compl. ¶¶ 2-3 [Dkt. No. 1]. On April 11, 2016, after the Court

advised him during a hearing to consider filing an amended complaint that limited the number of

issues and claims presented in this action, plaintiff filed his Amended Complaint, which added

two counts. Am. Compl. [Dkt. No. 15]. In the Amended Complaint, plaintiff, who began work

for the USPTO in September 2013, alleges in Counts I through V various failures by defendant

to accommodate his disabilities in violation of the Rehabilitation Act; Count VI alleges a hostile

work environment in violation of the Rehabilitation Act; Count VII alleges reprisal for

participating in Equal Employment Opportunity ("EEO") activity in violation of Title VII of the

Civil Rights Act of 1964; Count VIII alleges disparate treatment discrimination on the basis of

disability and failure to accommodate in violation of the Rehabilitation Act; and Count IX

alleges retaliation for requesting reasonable accommodation in violation of the Rehabilitation

Act.

Plaintiff seeks compensatory damages of $300,000 for "humiliation, pain and suffering,

emotional distress, loss of enjoyment of work, loss of reputation, nightmares, increased blood

pressure, panic attacks, and other anxiety and [Post Traumatic Stress Disorder] related symptoms

which prevented [] Stewart from working and fully enjoying his life." Am. Compl. at 37. In

addition, he seeks injunctive relief and writs of mandamus ordering his transfer to another

supervisor; removal of his "Safety Zone warning, Letter of Reprimand, Oral Warning, and 3-Day

Suspension" from his employment record; lost wages for his three-day suspension; a change of

one of his docket management scores to 95%; a change in his FY2015 end of year rating to

"commendable;" production bonuses associated with the newly-elevated production score;

approval of his request to come into work at certain times and maintain "an unorthodox schedule

outside" of the Increased Flexitime Program ("IFP") schedule; training for all USPTO staff

regarding sensitivity to disabilities; and his reinstatement to any position he would have had if

the discrimination had not occurred. Id. at 37-38.

Plaintiff filed motions for a temporary restraining order and a preliminary injunction to

stay proceedings related to his proposed removal from federal service, both of which were

denied. June 2, 2016 Order [Dkt. No. 29]; June 15, 2016 Order [Dkt. No. 35]. Plaintiff appealed

the denial to the preliminary injunction to the Fourth Circuit which "affirm[ed] for the reasons stated by the district court." Stewart v. Lee, No. 16-1816 (4th Cir. Nov. 21, 2016). The Motion to Dismiss is now ripe for resolution.

## A. Stewart's Employment History and Reasonable Accommodation Requests

Stewart alleges that he suffers from radiculopathy, which causes him back pain, and post- and continuous-traumatic stress disorder. Id. ¶¶ 18, 41. As a result of these disabilities, in April 2014, Stewart requested a flexible work schedule because the medications he took incapacitated him during the morning hours; specifically, he requested that he not be required to come into work at a mandated time, that he not be required to report his upcoming work schedule to his supervisor, and that all meetings, interviews, and mentoring sessions for which his attendance was required be scheduled after 12:00 p.m. Am. Compl., Ex. 1 at 3. In addition, plaintiff requested an ergonomic chair and keyboard, a standing desk, and a foot stool. Am. Compl., Ex. 5 at 1.

On September 19, 2014, Nancy Le, the Director of the Technology Center 2400 issued a determination granting Stewart's requests for the keyboard, chair, standing desk, and foot stool along with the flexible schedule insofar that plaintiff's supervisor agreed to schedule meetings "designed specifically for [plaintiff] for times after 12:00 P.M." "when possible." Id. That decision explicitly denied Stewart's other requests for scheduling accommodations, stating that he "is currently on an IFP schedule, which should allow him sufficient flexibility in his schedule to work around any difficulties he encounters when adhering to his typical work schedule." Id. Furthermore, that decision stressed that Stewart must work with his supervisor to establish a schedule "that allows him to maximize interaction, training and mentoring with his supervisor," and explicitly rejected plaintiff's request not to have to report his upcoming weekly work schedule to his supervisor. Id.

3

In addition, the reasonable accommodation determination mentioned that Stewart had already received the ergonomic chair, but that he "should contact the USPTO helpdesk to arrange for his request for an ergonomic keyboard." Id. With respect to the standing desk and foot stool, plaintiff received an email from USPTO Financial Management Office employee Shirlena Morgan on October 7, 2014 with the subject line "Stewart, F. RA Decision- 14-RA-107-CONFIDENTIAL," which included as an attachment the USPTO's reasonable accommodation decision and asked plaintiff to contact her "to coordinate [his] accommodation." Def Mem., Ex. 1 [Dkt. No. 31].[1] Apparently, plaintiff never responded to this email. Plaintiff attempts to excuse this failure to follow up by stating that because the email began with the salutation "Good afternoon," and not his name, he misunderstood the email. PI Reply [Dkt. No. 11] at 6.

As a result of Stewart's inaction, he did not receive the standing desk until March 19, 2015 and did not receive the foot stool until June 2, 2015. Am. Compl. ¶¶ 27, 28. Indeed, in November 2015, Stewart challenged his end of year rating, arguing that his docket management score would have been 95% instead of 92% had he promptly received the foot stool and desk. Am. Compl., Ex. 6. That challenge was denied by Wendy Garber ("Garber"), Director of Technology Center 2100, who found that "there [was] no clear nexus between [him] receiving [his] requested accommodation and [his] docket management scores." Id.

On June 4, 2015, Supervisory Patent Examiner ("SPE") Robert Fennema issued Stewart a letter of reprimand charging him with improper conduct in relation to the reporting of his time

---

[1] Because certain arguments in this motion constitute attacks on jurisdictional facts and are properly raised under Fed. R. Civ. P. 12(b)(1), the Court may "go beyond the allegations of the complaint" to consider other evidence without converting it to a motion for summary judgment. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Accordingly, all documents and pleadings that plaintiff has previously provided in support of his motions will be considered. Defendant has reproduced some of these documents as exhibits to its motion.

and attendance that began at least as early as February 2014. Def. Mem., Ex. 3 at 1. Specifically, the letter detailed five separate instances in March 2015 on which plaintiff was paid for hours he falsely documented having worked. Id. In addition, Fennema raised concerns that plaintiff was working outside the 5:30 a.m. and 10:00 p.m. hours permitted under the IFP policies, taking leave without first requesting it or obtaining supervisory approval and had been charged with approximately three hours of being absent without official leave. Id. at 1-2.

On November 17, 2015, plaintiff submitted a new request for a reasonable accommodation to Garber, seeking an immediate transfer from his then-supervisor SPE Kenneth Lo to SPE Kakali Chaki. Am. Compl. ¶ 39. Garber denied this request on December 7, 2015, stating in the written determination that "[t]he request to be reassigned to a different supervisor is not considered to be a form of reasonable accommodation." Def. Mem., Ex. 2 at 1. The determination also explained that even if Stewart had requested a cognizable reasonable accommodation, he had not provided sufficient medical documentation to support the request. Id. It also advised Stewart that he could submit a request for transfer through the Patent Office Professional Association ("POPA") transfer program. Id. There is no evidence in the record that Stewart attempted to obtain a transfer through POPA. Stewart alleges that the denial of his transfer request was motivated by discriminatory animus because Garber had allowed him to transfer supervisors from SPE Fennema to SPE Lo the previous month. Am. Compl. ¶ 39.

On December 17, 2015, plaintiff submitted to the USPTO Equal Employment Opportunity and Diversity Office ("OEEOD") a request for reconsideration of the transfer denial, attaching a physician's statement that Stewart was suffering from work-related stressors. Id. ¶¶ 41, 42. After Stewart repeatedly requested that the OEEOD expedite processing his reconsideration request and demanded explanations for the perceived delay in how the OEEOD

was handling his claim, the OEEOD denied Stewart's request for reconsideration on February 3, 2016. Id. ¶¶ 43, 45. In its decision, the OEEOD found that "the Agency does not have an obligation to reassign an employee to a different, specific supervisor and such a reassignment is not considered to be a form of reasonable accommodation." PI Reply, Ex. 10 at 2. The decision also opined that even if the USPTO were to grant Stewart's request, "there is no indication that the requested accommodation would be effective," pointing out that Stewart had never extensively worked for SPE Chaki and that she examines patent applications involving different subject matter than Stewart. Id. at 3.

On January 14, 2016, plaintiff was given both an oral and written warning by SPE Fennema that his production performance was at an "unacceptable" level in that he met only 16% of his assigned goal "under the new count system." Am. Compl., Ex. 9. This warning cautioned that during his "evaluation period" from January 10, 2016 to April 2, 2016, he was required to achieve at least the "[m]arginal level of performance" as defined in his performance plan, which was 88% of his assigned goal. Id.

Plaintiff was suspended for three days on February 23, 2016 based on unprofessional interactions with SPE Lo. Am. Compl. ¶ 51. The basis for this suspension was that Stewart was "rude and unprofessional" to SPE Lo during a pre-interview phone discussion on December 3, 2015, in which he "willfully refused to discuss the merits of the [patent] Applicant's arguments." Def. Mem., Ex. 4 at 1. The suspension was also attributed to plaintiff's "fail[ure] to follow [SPE Lo's] instructions and USPTO policy for conducting an applicant interview." Id.

One day before his suspension, Stewart threatened SPE Lo with civil liability in his individual capacity if SPE Lo attempted to meet with him. Am. Compl., Ex. 13. According to the evidence before the Court, Stewart's inappropriate workplace conduct continued to escalate over

6

the following months, PI Mot., Ex. 1 at 1-2 [Dkt. No. 20-1], culminating on May 5, 2016 when

the USPTO proposed removing Stewart from federal service, citing fourteen separate instances

in which the plaintiff displayed improper conduct, five of which were related to Stewart's failure

to follow his supervisor's instructions. Id. The Notice of Proposed Removal ("Notice") also

listed an instance during which Stewart

> engaged in inappropriate, unprofessional, and disrespectful behavior when [he] angrily
> told [his] supervisor that [he] does not have to, [sic] attend meetings to discuss cases,
> return his phone calls, or reply to his requests to discuss cases in response to his reminder
> of [his] obligation to do so.

Id. at 2. The Notice also described another occasion when Stewart "responded angrily to [his]

supervisor, began shaking, and then shut [his] supervisor's door and left after [he] arrived for a

meeting with [his] supervisor while [the supervisor] was finishing a phone call," as well as an

occasion when he "angrily gripped [his] papers, breathed heavily, snorted, and lunged forward

out of [his] chair" during a meeting with his supervisor. Id. Stewart submitted a statement

denying the allegations contained in the Notice, claiming that his supervisor's statements

"border[ed] on perjury." PI Mot., Ex. 2 at 1. He also provided an email he sent to the FBI

Washington, D.C. Field Office requesting prosecution of his supervisor for perjury and false

statements. PI Mot., Ex. 3. There is no information in the record about the resolution of the

Notice.

### B. Administrative Proceedings

On April 30, 2015,[2] Stewart consulted with the OEEOD, alleging that his managers

ignored or improperly denied various requests for reasonable accommodation and retaliated

---

[2] There is a discrepancy in the record before the Court. The letter attached to the Amended
Complaint from the USPTO OEEOD states that Stewart first contacted them on April 30, 2015,
Am. Compl., Ex. 1 at 5, whereas the Complaint claims that Stewart's first contact was on March
30, 2015. Am. Compl. ¶ 5.

against him before and after his formal request for reasonable accommodations was partially granted. Am. Compl., Ex. 1 at 4, 5; Ex. 2 at 1. On June 29, 2015, Stewart received a Notice of Right to File a Formal Complaint from the OEEOD. Stewart filed his first formal complaint with the OEEOD on July 14, 2015, alleging in 37 pages 12 incidents involving discrimination, failure to accommodate, hostile work environment, failure to engage in the interactive process, disparate treatment, harassment, undesired reassignment, and/or retaliation. Am. Compl. ¶ 10; PI Reply, Ex. 3.

Plaintiff amended this administrative complaint eight times before filing his complaint in this Court on February 29, 2016 and after filing this civil action he amended the administrative complaint on April 1, 2016 and May 18, 2016.[3] Surreply, Ex. 1 at 3. Plaintiff continued amending his complaint even though he sent an email on March 19, 2016 stating that he "waive[s] his right to request a Final Agency Decision . . . [and submitting his understanding that] [he] has the right to opt-out and proceed" in federal court, Surreply, Ex. 2. Plaintiff concedes that he "did not request dismissal specifically." Surreply at 3.

As of May 18, 2016, the date of the most recent amendment, plaintiff had filed at least 43 separate claims with the OEEOD, including 37 numbered claims and 6 unnumbered claims. PI Mot., Ex. 5 at 4 n.12. In addition, as of May 18, 2016, the OEEOD has dismissed 20 claims as untimely, 13 claims for failure to state a claim, one claim as duplicative, and accepted two claims on a limited basis because he did not have standing to raise them on the basis initially articulated. Id. at 4-14. On June 30, 2016, the USPTO OEEOD issued a Final Agency Decision dismissing the remaining claims in the complaint on "the basis of a pending civil action in a United States

---

[3] Plaintiff amended his administrative complaint on August 23, 2015, October 16, 2015, October 23, 2015, October 30, 2015, November 19, 2015, November 20, 2015, November 25, 2015, February 4, 2016, April 1, 2016, and May 18, 2016.

District Court in which the Complainant is a party provided that at least 180 days have passed

since the filing of the administrative complaint." Final Decision at 4 (quoting 29 C.F.R. §

1614.107(a)(3)).

## II.   DISCUSSION

Defendant's Motion to Dismiss primarily argues that plaintiff's complaint must be

dismissed because as of the date he filed the complaint, February 29, 2016, he had not exhausted

his administrative remedies and the Court lacks jurisdiction to consider his claims. Def. Mem. at

9-13. In addition, defendant contends that even if plaintiff had fully exhausted his administrative

remedies, his claims regarding the denial of his requests for reasonable accommodations should

be dismissed because he failed to timely file an administrative complaint. Id. at 13. Finally,

defendant argues that plaintiff's hostile work environment claims must be dismissed because he

has not pleaded sufficient facts to support a claim for relief. Id. at 14.

### A.  Standard of Review

Under Fed. R. Civ. P. 12(b)(1),[4] a court must dismiss an action if it finds subject matter

jurisdiction lacking. Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006).  A Fed. R. Civ. P.

12(b)(1) motion must be granted if the complaint "fails to allege facts upon which subject matter

jurisdiction can be based." Adams, 697 F.2d at 1219. In making this assessment, a court must

presume that all factual allegations contained in the complaint are true, "but it need not draw

---

[4] Although the USPTO only articulated the standard of review under Fed. R. Civ. P. 12(b)(6), the Court analyzes the exhaustion argument under Fed. R. Civ. P. 12(b)(1). The administrative exhaustion requirements for the Rehabilitation Act and Title VII claims are jurisdictional. Melendez v. Sebelius, 611 F. App'x 762, 764 (4th Cir. 2015). Because "[s]ubject-matter jurisdiction cannot be conferred by the parties, nor can a defect in subject-matter jurisdiction be waived by the parties[,]" federal courts have a continuous obligation to inquire about the presence of subject-matter jurisdiction sua sponte. Brickwood Contractors, Inc. v. Datanet Eng'g, Inc., 369 F.3d 385, 390 (4th Cir. 2004); see also Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." (emphasis added)).

argumentative inferences in the plaintiff's favor." <u>Blackhawk Indus. Products Grp. Unlimited,</u>

<u>LLC. v. U.S. Gen. Servs. Admin.,</u> 348 F. Supp. 2d 662, 665 (E.D. Va. 2004). The burden rests

with the plaintiff to establish that such jurisdiction exists. <u>Warren v. Sessoms & Rogers, P.A.,</u>

676 F.3d 365, 370–71 (4th Cir. 2012).

### B. <u>Analysis</u>

The Rehabilitation Act permits federal employees to file a civil action in certain

circumstances after filing a complaint with the relevant federal agency. <u>See</u> 42 U.S.C. § 2000e-

16(c). After a federal employee files his administrative complaint,

> [t]he agency is required to conduct an impartial and appropriate investigation of the
> complaint within 180 days of the filing of the complaint unless the parties agree in
> writing to extend the time period. When a complaint has been amended, the agency shall
> complete its investigation within the earlier of 180 days after the last amendment to the
> complaint or 360 days after the filing of the original complaint

29 C.F.R. § 1614.106(e)(2). Notably, "[a] complainant may amend a complaint at any time prior

to the conclusion of the investigation to include issues or claims like or related to those raised in

the complaint." § 1614.106(d).

Before commencing employment actions in federal court, federal employee complainants

must exhaust their administrative remedies. <u>Pueschel v. United States</u>, 369 F.3d 345, 353 (4th

Cir. 2004). Accordingly, an employee may file a civil action in federal court only after the time

period for investigation has passed. Specifically, the governing regulations provide that a civil

action may be filed:

> (a) Within 90 days of receipt of the final action on an individual or class complaint if no
> appeal has been filed; [or]
>
> (b) After 180 days from the date of filing an individual or class complaint if an appeal has
> not been filed and final action has not been taken[.]

29 C.F.R. § 1614.407.

As defendant accurately contends, if plaintiff were permitted to file suit in federal court

180 days after filing an administrative complaint, regardless of amendment, the Court would be adjudicating claims that the USPTO has not yet had the opportunity to investigate, let alone adjudicate. Reply at 3-4. As such, federal courts have consistently interpreted the language in § 1614.407(b) to require a complainant to wait 180 days from the last amendment or 360 days from the date of the initial complaint before filing a civil action. See, e.g., Johnson v. Bryson, 851 F. Supp. 2d 688, 710 n.8 (S.D.N.Y. 2012) (explaining that "[plaintiff] was not authorized to file a federal lawsuit until November 9, 2010, 180 days after her amended complaint was filed"); accord Beard v. Preston, 576 F. Supp. 2d 93, 100 (D.D.C. 2008) ("Plaintiff ha[d] exhausted his available administrative remedies, as more than 180 days have elapsed since he last amended his formal administrative complaint of discrimination, and a Final Agency Decision still ha[d] not been issued." (emphasis added)).

This is a logical interpretation of the regulatory structure because it minimizes "'judicial interference with the operation of the federal government[]' [and] also affords an 'agency the opportunity to right any wrong it may have committed.'" Austin v. Winter, 286 F. App'x 31, 35 (4th Cir. 2008) (quoting Doe v. Oberweis Dairy, 456 F.3d 704, 712 (7th Cir. 2006); McRae v. Librarian of Congress, 843 F.2d 1494, 1496 (D.C. Cir. 1988)). Indeed, "[a]llowing this agency the first crack at these cases respects Congress's intent 'to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes.'" Sydnor v. Fairfax Cty., 681 F.3d 591, 593 (4th Cir. 2012) (quoting Chris v. Tenet, 221 F.3d 648, 653 (4th Cir. 2000)).

In Laber v. Harvey, No. 05-0803, 2005 WL 3008510 (E.D. Va. Nov. 7, 2005), aff'd, 204 F. App'x 332 (4th Cir. 2006), under what plaintiff concedes were "similar circumstances," Pl. Opp. at 17-18, a court in this district dismissed an employment discrimination action because the

plaintiff had not properly exhausted his administrative remedies by waiting 180 days without

agency action after the last amendment. In particular, after filing his initial administrative

complaint on September 15, 2004, the Laber plaintiff amended it on March 15, 2005 and then

filed a civil action in federal court based on the claims therein on July 8, 2005. Id. at *1. The

Laber court held that the effect of plaintiff's March 15, 2005 amendment was to extend the time

allotted for the agency to investigate his complaint to September 12, 2005 pursuant to

§ 1614.106(e)(2), which was the earlier of 180 days after the last amendment or 360 days after

the complaint was initially filed. Id. at *2. According to the Laber court, the additional period for

investigation meant that he could not file suit in federal court before that time had run. Id.

Defendant correctly argues that like the plaintiff in Laber, when Stewart filed his

complaint he had failed to exhaust his administrative remedies because the amendments to his

administrative complaint extended the time period he was required to wait before filing his

complaint in federal court to July 8, 2016,[5] which is the earlier of 180 days after the last

amendment or 360 days after he filed his initial complaint. Def. Mem. at 9-13; Reply at 2-6.[6]

The existence of a final agency action at this stage is irrelevant because failure to exhaust

is analyzed based on the filing date of the initial complaint, not the date of the amended

complaint or whether the action remains pending when 180 days have elapsed. Per 42 U.S.C. §

2000e–16(c), an employee "may file a civil action" after 180 days without a final decision from

the EEOC. (emphasis added). In other words, irrespective of whether the 180-day mark passes

while the civil action is pending, a plaintiff who filed "before the 180–day period has expired has

---

[5] Defendant asserts that 360 days from July 14, 2015 is July 18, 2016, Def. Mem. at 12; however, by the Court's calculation, it is July 8, 2016.

[6] The first iteration of Stewart's administrative complaint was filed on July 14, 2015. Am. Compl. ¶ 10. Had he merely requested to amend once, on August 23, 2015, 180 days would have elapsed without final agency action by the time he initially filed this civil action on February 29, 2016.

not exhausted his administrative remedies, and his suit must be dismissed." <u>Murthy v. Schafer</u>,

579 F. Supp. 2d 110, 114–15 (D.D.C. 2008), <u>aff'd sub nom.</u> <u>Murthy v. Vilsack</u>, 609 F.3d 460

(D.C. Cir. 2010); <u>see also</u> <u>Laber</u>, 2005 WL 3008510 at *2 (granting a motion to dismiss, in an

order dated November 7, 2005, because the complaint was filed before the September 12, 2005

date of exhaustion under § 1614.107(b) ).

Because failure to exhaust is fatal to plaintiff's civil action, the Court need not consider

defendant's additional arguments that plaintiff's claims regarding denial of reasonable

accommodations and hostile work environment should be dismissed based on plaintiff's failure

to timely file an administrative complaint and failure to plead facts sufficient to support a claim

for relief.

## III.   CONCLUSION

For the reasons stated above, defendant's Motion to Dismiss [Dkt. No. 30] will be

GRANTED by an appropriate Order to be issued with this Memorandum Opinion.[7]

Entered this 17 day of March, 2017.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge

---

[7] Because the Court does not have subject matter jurisdiction, the dismissal must be without
prejudice.